

_____
Honorable Thad J. Collins
United States Bankruptcy Judge

**Entered on Docket**
**November 27, 2013**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: ) | Case No.:  BK-S-10-22371-LBR |
| ) | Chapter 7 |
| DONALD R. GRISLEY and ) | |
| SONIA D. GRISLEY, ) | |
|     Debtors. ) | Adversary No. 10-01428-LBR (lead) |
| -------------------------------------------- | consolidated with 11-01132-LBR |
| OJIMA OJI, LLC, and TSG-XII, ) | |
| LLC, ) | **ORDER** |
|     Plaintiffs, ) | |
| ) | Hearing Date:   October 24, 2012 |
| vs. ) | Hearing Time:   9:30 a.m. |
| ) | |
| DONALD R. GRISLEY and ) | |
| SONIA D. GRISLEY, ) | |
|     Defendants. ) | |

    This matter is before the Court on Plaintiffs' objection to Debtors' discharge under 11 U.S.C. § 727(a)(4)(A).  The Court held a two-day trial on this matter in Las Vegas, Nevada.  Plaintiffs, Ojima Oil, LLC and TSG-XII, LLC, were represented by Gerry Zobrist, Frederick Santacroce, and Antony Santos.  Defendants-Debtors, Donald R. Grisley and Sonia D. Grisley, were represented by Shawn Perez.  After trial, the Court took the matter under advisement and allotted a

significant amount of time for post-trial briefing. The record is now complete and the case is ready for disposition. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## STATEMENT OF THE CASE

Plaintiffs seek a denial of Defendants-Debtors' discharge under 11 U.S.C. § 727(a)(4)(A). Plaintiffs claim Debtors intentionally failed to disclose numerous personal bank accounts, business entities, pre-petition and post-petition transfers, and payments Debtors made to various parties on their bankruptcy schedules and Statement of Financial Affairs ("SOFA"). Plaintiffs assert that Debtors actions were intentional and willful, and conceived to hinder and delay the bankruptcy process and/or expressly frustrate the objectives of creditors. Debtors resist Plaintiffs' assertions and provided extensive testimony at trial to demonstrate that the omissions on their initial bankruptcy schedules and SOFA were neither material nor intentional. Based on the testimony at trial—in particular the testimony from Debtors' two different bankruptcy attorneys—the Court rules in favor of Debtors and denies Plaintiffs' request to deny their discharge.

## FINDINGS OF FACT

Plaintiffs, Plaintiffs' principals, Debtors and/or some of Debtors' businesses were involved in pre-bankruptcy business relations. Debtor Donald Grisley was a real estate broker and property manager. He had two business entities in which he

was the sole member, DRG Properties and Signature Estates.  Donald Grisley also held an interest in Private Servicing, LLC, a mortgage servicing company.  That company operated under several fictitious names, some of which appear to have been related to entities that are Plaintiffs in this case.  Donald Grisley also had interests in other entities that are no longer active.

The two LLCs in which Debtor Donald Grisley was the sole member, DRG Properties, LLC and Signature Estates, LLC, were significantly intertwined.  These companies engaged in a a significant number of real estate transactions in the run-up to bankruptcy.  The number of different entities, transactions, and internal relationships created a level of complexity in this case that is beyond the normal consumer bankruptcy.

Plaintiff Ojima Oji, LLC, asserts that it invested significant sums with Donald Grisley or one of his companies.  Ojima asserts it was pulled into an investment scheme purporting to involve the purchase and later sale of debt instruments on non-performing real estate.  Ojima also claims Debtors sold Ojima an interest in Plaintiff, TSG-XII, LLC.  Ojima and TSG claim Debtors misappropriated funds from these entities for their own personal use.

As the real estate market collapsed in 2008 and 2009, Debtors began to experience significant financial problems.  This eventually resulted in Debtors

3

consulting with an attorney, Layne Barney, about a bankruptcy filing. Mr. Barney met with Debtors on several occasions. Mr. Barney described his practice as more of a general consumer bankruptcy practice. He recognized the challenges this case presented and explained to Debtors that he hoped to get the case on file and then turn it over to an attorney named David Tanner. Mr. Tanner had much more experience and expertise in similar complex bankruptcies. Mr. Barney, however, assisted Debtors in getting the petition ready and on file because time was of the essence. Mr. Barney made what he described as an emergency filing on July 1, 2010. Plaintiffs, or entities related to Plaintiffs, obtained a judgment against Donald Grisley in summer 2010 that led to this bankruptcy filing.

    Mr. Barney continued to believe Mr. Tanner would be taking over the case, and did not realize this had not happened until he received notice that the bankruptcy schedules and SOFA had not been timely filed. He quickly scheduled several meetings to obtain the appropriate information from Debtors. Mr. Barney then assisted Debtors in filing their schedules and SOFA on August 15, 2010. Mr. Barney noted that he still intended to hand the case over to Mr. Tanner at that point. That hand-off was not made for a variety of reasons. Mr. Barney admitted he was uncomfortable with the complexity of the case. He, nevertheless, stuck with Debtors to try to help them sort things out until they could get a different attorney.

After Mr. Barney filed the materials and the § 341 meeting, several parties, including the Bankruptcy Trustee, had many additional questions. Mr. Barney tried to answer these questions while continuing to search for replacement representation. Debtors finally got a new attorney, Steven Yarmy, to assist them with these issues. Mr. Yarmy had more experience as a practitioner and, in particular, more experience with complicated financial transactions. Mr. Yarmy met with Debtors to get additional information for the Trustee and the other parties who raised issues about their filing.

Mr. Yarmy immediately contacted the Trustee to get clarify what Debtors should present. Around that time, Plaintiffs filed this § 727 action seeking denial of discharge along with a claim under § 523 to deny dischargeability of debts to Plaintiffs.

Mr. Yarmy eventually sent material to the Trustee to clarify the issues the Trustee raised. Mr. Yarmy worked diligently to get this matter straightened out. Mr. Yarmy then filed amendments to the schedules and SOFA.

Just before Mr. Yarmy filed the amendments, however, Plaintiffs filed a Motion for Summary Judgment in their § 727 and § 523 case. Debtors resisted the Motion for Summary Judgment. The Court held a hearing and denied the Motion for Summary Judgment. The Court also decided to bifurcate the case and hold

separate trials on the § 727 matter (currently before this Court) and then the § 523 matter, if necessary.

The Court held a two-day trial on the § 727 case.[1] During trial, it became apparent that there was bad blood between the principals for Plaintiff and Debtors. The parties each presented a number of witnesses and exhibits. Plaintiffs called both Debtors and their initial attorney, Layne Barney. Defendants-Debtors offered their own testimony and that of their second attorney, Steven Yarmy.

Plaintiffs focused their case on the numerous bank accounts and transactions that Debtors did not disclose on the initial bankruptcy schedules and SOFA. Plaintiffs presented most of their case by examining Debtors. In that examination, Debtors acknowledged that a number of bank accounts and a few transactions were not disclosed on their initial schedules and SOFA. On cross-examination, however, Debtors acknowledged the mistakes, explained why they happened, and what they did to correct the mistakes.

The Court finds Debtors' testimony to be credible. While Debtors were forced to acknowledge some embarrassing financial mismanagement and poor choices (including attempting to keep a luxury boat for as long as possible), they were able to provide reasonable and credible explanations for the omissions in their

---

[1] The case was tried before the undersigned sitting by special designation.

initial filings. Debtors pointed out that many of the different bank accounts Plaintiff presented were either closed or had little or no value at the time of filing. Debtors explained that they had a number of these different accounts because Plaintiffs or some of its principals were actively pursuing and/or freezing accounts that Debtors' entities needed to operate. Debtors were forced to open new accounts to continue operating. Debtors noted that they disclosed all of this to Mr. Barney before the initial bankruptcy filing and again before the filing of the schedules and SOFA. When questions arose about their initial filings that Mr. Barney could not answer, they retained Mr. Yarmy to help them address these concerns. They again made significant efforts to give all relevant information to Mr. Yarmy when he entered the case, and Debtors attempted to correct any misunderstandings.

Plaintiffs did demonstrate, quite clearly, that many of Debtors' bank accounts and property transfers were in fact not disclosed in the initial filings. Plaintiffs pointed out that Debtors filed the bankruptcy petition, supporting schedules, and SOFA under oath. Debtors admitted that they signed the materials prepared by Mr. Barney, but noted that they relied on his determination of what to include and what not to include.

While Plaintiffs demonstrated Debtors' failure to disclose, they did not demonstrate in any way that the failures were material and intentional. In fact, the

7

evidence showed the opposite.  As noted, the Court found Debtors' explanations of the oversights and omissions credible on the initial filing.  They pointed out that the vast majority of omissions related to items that had little or no value and little effect on the estate's administration.   They also pointed out that they provided their attorneys with all relevant information for the filing.  While Debtors' testimony, standing alone, may have been enough, it was significantly bolstered by the persuasive and powerful testimony from the two attorneys that represented Debtors at different points in the bankruptcy.

     Plaintiffs called Mr. Barney, and he detailed his methodology and involvement in the case.  Mr. Barney explained that it was apparent early in his discussions with Debtors that he would need additional help to prepare the bankruptcy properly.  He also recognized, however, that time was of the essence because entities related to Plaintiffs had obtained a judgment against Donald Grisley.  It became clear to Mr. Barney that he would need to file the initial petition immediately to get Debtors the protection of the automatic stay.  He noted that it was always his plan to turn the case over to David Tanner, an attorney Mr. Barney described as more familiar with the issues and complexities involved in this particular bankruptcy.  Mr. Barney had some experience with bankruptcy in his practice, but it appeared to be largely basic consumer bankruptcies.  This case,

however, involved a number of complex financial entities and transactions that far exceeded the normal demands of a consumer bankruptcy case.

Mr. Barney noted that he prepared the petition, supporting schedules, and statements to the best of his ability. He tried to include what he thought to be all of the relevant information. He noted that he was unsure about which bank accounts and transactions should and should not be included. In particular, he was unsure about whether he needed to include some closed accounts and/or some of the other entity accounts. Mr. Barney candidly admitted that he missed a deadline for filing the schedules and SOFA. He also conceded he thought Mr. Tanner had taken over the case when, in fact, he had not. Mr. Barney further stated that Debtors probably made him aware of all of the related bank accounts involved in the case. He specifically noted that Debtors were forthcoming and willing to provide as much information as he needed. His testimony demonstrated that the complexity of the case left him somewhat uncertain about what information he in fact needed from Debtors.

Mr. Barney also helped explain another issue in the case. Plaintiffs' examination of Debtors dealt with an undisclosed cash withdrawal of $6,000 around the time of the bankruptcy filing. Both Debtors and Mr. Barney explained that Debtors paid him $3,000 of that cash for his fee. Debtors' and Mr. Barney's

testimony also showed the confusion about how to pay and reserve money for the fees in this case. There were issues about whether any additional work would require additional payment to Mr. Tanner who was slated to take over the case. Mr. Barney admitted not only that this uncertainty about the extent of his role in this case affected the fee transaction, but also significantly affected his overall work on the case. Mr. Barney reiterated his belief that Mr. Tanner would take the case over quickly after filing. Mr. Barney again candidly conceded that he concluded he would not need to concentrate his full efforts on the filing because Mr. Tanner would come in and review whatever he did and make the proper changes.

Unfortunately, the handover did not go as Mr. Barney anticipated. Mr. Tanner never became involved in the case. Mr. Barney acknowledged this was a key reason the schedules and SOFA were not immediately corrected. Given the time pressure and complexity, Mr. Barney admitted that he probably did not do a sufficient job on the filing. Mr. Barney's testimony, as a whole, made it quite clear that he believed Debtors were forthcoming, probably provided all information to him, and that he had no reason to believe that they were attempting to hide anything from creditors. Mr. Barney clearly felt that Debtors were in this position partially because of his failure to perform adequately.

After Mr. Barney's testimony, Debtors called Steven Yarmy, their second bankruptcy attorney in the case. Mr. Yarmy provided similarly candid testimony. He noted that he became involved to help fix the problems and take over the case from Mr. Barney. Mr. Yarmy was unequivocal in noting that Debtors provided all the details that he requested. Mr. Yarmy noted that Mr. Barney probably had much of the information before the initial filing. Mr. Yarmy contacted the Trustee and quickly provided the information Trustee requested. Mr. Yarmy filed the amended schedules on Debtors' behalf on May 12, 2012. He again noted that he put together the amended schedules and SOFA with the information that Debtors had supplied to both him and Mr. Barney. He noted that Mr. Barney had provided the Trustee with some additional information at the § 341 meeting. Mr. Yarmy provided this additional information to the Trustee in April 2012. Mr. Yarmy noted, as did Mr. Barney, that Debtors had complicated financial affairs. There is no dispute that Mr. Yarmy amended Debtors' filings to correct them, with some very minor omissions that Mr. Yarmy noted were his responsibility. Mr. Yarmy, like Mr. Barney, made clear that he believed Debtors had been cooperative, forthright, and acted with no intent to hinder the bankruptcy process and/or the creditors in this bankruptcy.

Debtors' two bankruptcy attorneys' testimony provided a candid, unflinching, and even, at times, unflattering portrait of their work. Mr. Barney, in particular,

11

took full responsibility for the oversights and problems related to the initial filings. Both attorneys' testimony made very clear that they did not believe Debtors' intended to be anything other than transparent and cooperative. The Court finds the attorney testimony to be extremely credible. Their candid and forthright testimony, and focus on their clients' interests (even when contrary to their case), was a credit to the profession.

## CONCLUSIONS OF LAW

The case law applicable to this case is summarized in <u>Retz v. Samson</u> (<u>In re Retz</u>), 606 F.3d 1189 (9th Cir. 2010). The Ninth Circuit addressed, in detail, the standards applicable to an objection to the debtor's discharge under § 727(a)(4)(A). The Ninth Circuit began with the general principles governing § 727 claims.

> Those objecting to discharge "bear[ ] the burden of proving by a preponderance of the evidence that [the debtor's] discharge should be denied." <u>Khalil v. Developers Sur. & Indem. Co.</u> (<u>In re Khalil</u>), 379 B.R. 163, 172 (9th Cir. BAP 2007), <u>aff'd</u>, 578 F.3d 1167, 1168 (9th Cir.2009) (expressly adopting the BAP's statement of applicable law). "In keeping with the 'fresh start' purposes behind the Bankruptcy Code, courts should construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge." <u>Bernard v. Sheaffer</u> (<u>In re Bernard</u>), 96 F.3d 1279, 1281 (9th Cir. 1996). This does not alter the burden on the objector, but rather means that "actual, rather than constructive, intent is required" on the part of the debtor. <u>In re Khalil</u>, 379 B.R. at 172. When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to the bankruptcy court's findings, because the bankruptcy court, as the trier of fact, had the opportunity to note "variations in demeanor and tone of

voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson, 470 U.S. at 575, 105 S.Ct. 1504.

In re Retz, 606 F.3d at 1196.

The Ninth Circuit then turned to the law under § 727(a)(4)(A):

> Section 727(a)(4)(A) states: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account." 11 U.S.C. § 727(a)(4)(A). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." In re Khalil, 379 B.R. at 172. "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Id. (quoting Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)).
>
> To prevail on this claim, a plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing In re Wills, 243 B.R. at 62). A finding of fraudulent intent is a finding of fact reviewed for clear error. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir.1986).

Id. at 1196–97 (alterations in original). In this case, only elements (2) and (4), relating to materiality and fraudulent intent, are at issue.

### A. Materiality

Debtors assert their omissions from their initial schedules were immaterial.

> A fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property."

13

> In re Khalil, 379 B.R. at 173 (quoting In re Wills, 243 B.R. at 62). An omission or misstatement that "detrimentally affects administration of the estate" is material. In re Wills, 243 B.R. at 63 (citing 6 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 727.04[1][b] (15th ed. rev.1998)).

Id. at 1198. Under the first definition, the facts would seem to indicate the omissions here related to material facts. However, under the second definition—that the omission "detrimentally affects administration of the estate"—the facts seem to show the omissions were not material. The Court finds the second definition adds to and further clarifies the meaning of material.

The Ninth Circuit BAP has noted that "a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for a denial of discharge under § 727(a)(4)(A)." Merena v. Merena (In re Merena), Bankr. No. 08-60066, Adv. No. 08-00046, 2009 WL 4914650, at *7 (B.A.P. 9th Cir. 2009) (cited source omitted).

Plaintiffs bear the burden of proof on this and the other prima facie elements of § 727(a)(4)(A). Plaintiff spent no time showing how the omissions had an "impact on" the bankruptcy case. Plaintiffs seem to rely on the inference that this omitted material—dealing with bank accounts and undisclosed transfers—had to be material by its very nature. Debtors have countered by arguing that none of the omitted material, which was later disclosed, had any value or real effect on the

14

estate. Normally, a case Trustee is a critical witness on this issue. See id.; see also Cummings v. United States Trustee (In re Cummings), Bankr. No. 09-10576-RTB, Adv. No. 09-01383-RTB, 2012 WL 4747218, at *10 (B.A.P. 9th Cir. 2012). Plaintiffs did not call Trustee here or present any evidence of materiality. Debtors have argued that the Court should note the Trustee's absence from—and lack of interest in—this case. The Court concludes Plaintiffs have failed to meet their burden of proving materiality.

### B. Fraudulent Intent

While the Court's conclusion on materiality is dispositive, the Court will nevertheless address the fourth element—fraudulent intent. Debtors have argued there is no evidence of intent to deceive, delay, or defraud. They argue that, in fact, the evidence is directly to the contrary. Plaintiffs again believe the circumstantial evidence implies the fraudulent intent.

The Ninth Circuit again addressed the standards for fraudulent intent in Retz:

> To demonstrate fraudulent intent, [plaintiff] bore the burden of showing that: "(1)[Debtor] made the representations [*e.g.*, a false statement or omission in bankruptcy schedules]; (2) ... at the time he knew they were false; [and] (3) ... he made them with the intention and purpose of deceiving the creditors." In re Khalil, 379 B.R. at 173 (quoting In re Roberts, 331 B.R. at 884) (second and third alterations in original). Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir.1985); see also In re Roberts, 331 B.R. at 884. Reckless indifference or

15

>> disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent. In re Khalil, 379 B.R. at 173-75.

In re Retz, 606 F.3d at 1198–99 (third alteration in the original) (emphasis omitted).

Debtors here note they showed no reckless indifference or disregard for the truth, and certainly did not act with any "purpose of deceiving the creditors." Id. at 1198–99. To help demonstrate they had no such intent, they show they relied on the advice of counsel. The Ninth Circuit recognized this defense in Retz:

> "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." In re Adeeb, 787 F.2d at 1343. "However, the debtor's reliance must be in good faith." Id. The advice of counsel is not a defense when the erroneous information should have been evident to the debtor. Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir.1987). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Id.

Retz, 606 F.3d at 1199.

"A debtor cannot rely on the advice of counsel as a defense to a failure to disclose where the debtor never discloses the facts to counsel." Shapiro v. Smith (In re Smith), 481 B.R. 633, 637 (Bankr. D. Nev. 2012). Chief Judge Nakagawa recently applied the standards from Retz and concluded debtor properly relied on her disclosure of the information to counsel. Id. He discussed the issue at length,

16

observing first and foremost that he found debtor's testimony credible and that she disclosed the information to her attorney.  Id.  The same conclusions apply here.

As noted above, the Court found the testimony of Debtors' bankruptcy attorneys to be extraordinarily persuasive and credible.  Debtors and their attorneys all testified Debtors disclosed the necessary information and relied on their attorneys to provide the correct information.  The Court finds and concludes that this testimony, at a minimum, shows Debtors properly relied on their attorney's advice and counsel.  The omissions from the schedules were not the type of "erroneous information [which] should have been evident to the debtors."  Retz, 606 F.3d at 1199.  Even the attorneys struggled to determine what needed to be disclosed in this complicated individual bankruptcy case.  The attorneys also noted that Debtors were forthcoming and gave no indication they were "playing ostrich" here.  To the contrary, this testimony showed they attempted to disclose and provide all the necessary information.  The Court concludes that, on this evidence and the entire record, Plaintiffs failed to demonstrate fraudulent intent—the fourth element of their prima facie case.

## CONCLUSION

For the reasons discussed above, the Court overrules Plaintiffs' objection to discharge under § 727(a)(4)(A). The Court will set trial on the dischargeability claim under § 523(a) after a scheduling hearing.

Notice and copies sent through:

CM/ECF ELECTRONIC NOTICING AND/OR BNC

and sent via FIRST CLASS MAIL BY THE COURT AND/OR BNC to:

CASEY CRAIG
1086 SAPPHIRE SKY CT.
HENDERSON, NV 89015

SIGNATURE ESTATES REALTY, LLC
5101 HONEY GINGER AVE
LAS VEGAS, NV 89101

THE SUSSEX GROUP, INC. (FL)
5101 HONEY GINGER AVE
LAS VEGAS, NV 89131

THE SUSSEX GROUP, INC. (NV)
5101 HONEY GINGER AVENUE
LAS VEGAS, NV 89131

DONALD R GRISLEY
5101 HONEY GINGER AVE.
LAS VEGAS, NV 89131

\* \* \*